We'll move to the next case of the day, which is Felts v. Barry Hill, or sorry, Felts v. Commissioner Saul, which is case 18-3620. We'll hear first from Mr. Duncan. Good morning. May it please the court. Dana Duncan on behalf of Ricky Lee Felts. I will not take up probably the entire ten minutes of my argument, because this is a relatively limited argument, very limited point of law. This case turns on one thing, which is Dr. Gregory Cowens completed a consultative examination at the request of the state agency, evaluating Mr. Felts' mental impairments. He found that Mr. Felts had a major depressive disorder, had a GAF score, Global Assessment of Functioning Score of 58, which is in the moderate range. And then provided work restrictions, which indicated that he felt that Mr. Felts was 59 years of age. The judge limited him to sedentary work, I do believe. He would have met GRID rule or the medical vocational guidelines under 20 CFR chapter 404 subpart P appendix 1, or excuse me, appendix 2 at 202.14 if he could not perform his past work. Mr. Felts had past work that was skilled and semi-skilled. The judge found that he could perform that. He had order clerk and help desk representative. Order clerk has a specific vocational preparation or SVP of four, reasoning level of three, help desk representative was an SVP of seven. And the question is, is whether the limitation, if he was indeed limited to simple or understanding and remembering, carrying out simple instructions, that would be listed as unskilled pursuant to the vocational expert's testimony at the hearing. And would preclude the past work. The judge ruled that Dr. Cowan found that he could perform at least, or that there were no limitations associated with that. And then found that he could perform order clerk or help desk representative. I urge the court to apply a common sense understanding to this. If I- You're putting a lot of pressure on us when you ask us to apply common sense. Go ahead. If we do that, how do we account for the fact that apparently Mr. Felts in the relevant time period was delivering sermons and writing a book? I'm just going by, and I understand the court's problem. I'm not saying that Mr. Felt's impairments by themselves would be disabling. And the fact that he's doing- Let's focus just on the question of whether we should imply from Dr. Cowan's report that he was limited to only simple instructions. Writing a book is something that can be done in brief increments. It can be done over time. I'm looking for something else in Dr. Cowan's report that gives any indication of such a degree of impairments. Dr. Cowan's report does indicate, as part of the mental status examination, that he had a problem with teariness and overall problems with depression in general. He reported that in general. Dr. He basically, he reads a bit, makes coffee. He reads for hours in a day, right? Yes. The question though is, again, whether he can sustain full-time competitive employment beyond simple routine and repetitive, and that's the issue. It wasn't that Dr. Cowan at any time said he could at least perform simple routine and repetitive, it wasn't that minimally he could perform this, that's what his statement was. And Dr. Cowan evaluated him, he did a full assessment of him. He did a mental status examination. He is supposed to, by their regulations, be given weight. That's the statement he made, and that's the difference. And even if it's not enough to limit him to unskilled work, it is a factor that the ALJ had to account for in the RFC, because even non-severe impairments have to be addressed in the residual functional capacity assessment. It could have been enough to have eliminated work that was on the middle scale of semi-skilled work. And would have probably precluded the high-skilled work at the help desk he was saying. He has functioning. The question is, is things such as stress levels, his mood in general, everything that's in here that talks about what he does and doesn't do is stuff that can be done in short bursts. But yet, when he talks to him in detail, he indicated symptoms of depression that have been going on for years, having difficulty with crying spells, having difficulty with low energy, low self-esteem, but no active suicidal ideation. So I understand, and again, I'm pointing out that there's nothing about this case that would turn on the mental impairment. If he did not have this physical limitations, there would be no case. It is simply an issue of what limitations he has and whether those limitations would limit his ability to perform the two jobs that the vocational experts cited and the ALJ found that he could perform. So on that, unless there are questions, I'll just reserve the remaining for rebuttal. Thank you, Mr. Duncan. Mr. Adili, for the government. Good morning, your honors. Judge Hamilton, may it please the court. Javed Adili on behalf of the commissioner. Under the forgiving substantial evidence standard, which requires a commonsensical reading of the ALJ's decision, the ALJ here gave good reasons for her conclusion that Mr. Feltz had no severe mental impairment and no attendant mental limitations. When you look at the ALJ's decision at step two, the ALJ immediately addressed his alleged depression. Immediately began with sort of a discussion, a full discussion of the contents of Dr. Cowan's report, including his mental status examination. Noting that Dr. Cowan, like Mr. Miller, Mr. Feltz's therapist, found him in the mental status examination to have good concentration and good memory. And then quoted in its entirety the statement of work capacity that Dr. Cowan gave on page 520 of the record. The beginning of that does say that Mr. Feltz should be able to understand, remember, and carry out simple instructions. And then immediately after that, it is followed in the same paragraph by a series of statements, each of which indicates no limitation, no limitation in the ability to work with others, no limitation in attention and concentration, no limitation in work pace, no limitation in the ability to respond to changes in the workplace. The ALJ did not explicitly say the words, I read these two statements consistently. But it is obvious from the context that that's what the ALJ was doing. Moreover, the ALJ didn't stop there. The ALJ cited Dr. Lefebvre's state agency assessment of the record, which specifically assessed Dr. Cowan's opinion, noted that it opined no limitations, and then itself, that opinion also opined no limitations. Read them both consistently and gave them both great weight. The ALJ didn't stop there. Went on in the RFC section to consider still, despite her findings at step two, whether Mr. Feltz's alleged concentration problems produced any limitation. Noted that he said at the hearing, sort of for the first time ever in the record, because if you look at this record, there is nothing in the record about concentration problems. There's his allegation at the hearing, and that's pretty much it. Notes his allegation, but notes that he never told his doctors that his medications were causing concentration problems. And that the record just didn't seem to support it. He had about two years of therapy with Mr. Miller following his release from prison. And, you know, the ALJ did not cite that against Mr. Feltz in any way, except to note that the record did not support concentration problems, right? If you look, and I encourage the court to look at Mr. Miller's notes, because for mostly handwritten treatment notes, they're relatively legible. They don't document the sort of limitation that Mr. Feltz asks the court to find this disputed sentence to connote. And then the ALJ cited the fact that Mr. Feltz was preaching, and also that he was still doing computer work. Indeed, the ALJ noted that part of the reason he wasn't able to work was that he couldn't get work. He had difficulty finding work because of his status as a felon. Now, again, she didn't use that against him, except to note the fact that the difficulty he was experiencing in getting work had nothing to do with his alleged mental impairment, and more to do with that status, that legal status. And that, I think it's page 908 of the record, it's included three times in the record. There's a treatment note by Mr. Miller, the therapist. He indicates that Mr. Feltz had been up for a job and had not gotten it because they had run a background check and that had presented a difficulty. So because the record is bereft of evidence that suggests concentration limitations, and because we can tell from a commonsensical reading of the ALJ's analysis at step two, that she read the disputed language harmoniously with the language that indicated no attention and concentration problems. And because Dr. Lefebvre agreed, and ultimately the district court agreed, now that may not, that's not the sort of end all be all of the analysis, but everyone who has looked at this thus far has agreed that the ALJ could reasonably have read this evidence to mean that no mental limitation was indicated. How does that reading of the evidence, Mr. Adili, fit with the global assessment of functioning of score of 58 that Dr. Cowan gave the plaintiff? I mean, the GAF score does present at least a minor challenge, right? Because the GAF score is consistent with a finding of moderate limitation. As we said in our brief, it is toward the milder end. And Dr. Lefebvre noted that specifically in her evaluation of the evidence, and still found it consistent with a finding of mild limitations and no specific mental limitation. As we noted in our brief as well, this court in Denton against Astru has said that GAF scores do not indicate a level of limitation, because they kind of are a collection of different kinds of concerns, including the financial concern that Dr. Cowan noted that Mr. Feltz had. So the fact that it's close enough to the line, the fact that as the ALJ, I'm not sure if the ALJ noted this, but the ALJ gave great weight to Dr. Lefebvre, who did note the GAF score and said that it was consistent with a finding of, only a mild finding of a mental rating. And the fact that the ALJ did not ignore it, the ALJ took note of the GAF score. Of course, she didn't say more than she's decided. It does not, I think, overcome the, again, dearth of evidence that there were any concentration problems here. Mr. Dilley, you, in your brief, identified some new regulations that took effect while this case has been pending concerning mental health issues. Do the new regulations actually matter here, in your view? I don't think they do, except I wanted to bring them to the court's attention because Dr. Lefebvre opined under the old regulations, and the ALJ analyzed the new regulations when determining the BEAT criteria. Thank you. There is a possibility that, there doesn't appear to be any disconnect between those analyses. Dr. Lefebvre found it most mild limitations across the board, as did the ALJ, but I wanted to bring it to the court's attention that there was that changeover, sort of during the pendency of the case. We don't necessarily stay on top of those new regulations, thank you. And then, just with respect to the last argument in Mr. Feltz's brief, the notion that the ALJ had to do something to dispel the possibility, or address the possibility that the impairments in combination would give rise to a mental limitation. It's not clear what the ALJ had to do more than what she did, which was, she found at step two that the mental impairment was not severe. But then, when she conducted the analysis of the RFC, again considered the evidence regarding concentration, and specifically addressed it, even though she had already said the impairment was non-severe, she considered whether the evidence supported any concentration limitation, and concluded that it did not. Because the record overwhelmingly supported that finding, the ALJ's decision should be found to be reasonable and should be affirmed. And unless the court has any other questions, we otherwise stand on that brief. Thank you, Mr. O'Dilley. Thank you. Rebuttal, Mr. Duncan? Briefly, Your Honors. We're not alleging that there were concentration problems. We're not alleging that there were social functioning problems. We're not alleging that there were adaption problems. The first of the four categories that Social Security says that mental impairments cause in relation to work are understanding, remembering, and carrying out simple or detailed instructions. That's the issue. And in this particular case, we have one doctor who says that there is an impairment. And to say that he didn't indicate that is contrary to the fact of what he found as far as his global assessment of function. What's the clearest indication that he found an impairment? Because of the GAF score itself. That's the issue. I mean, the fact that he made a GAF of 58 indicates that he believed that there was some level of impairment and then indicated what that impairment was. If he intended to not find that, why would he go then to the next steps of saying all the rest of those categories were not severe? He could have easily said that there was no impairment or any limitation in understanding, remembering, and carrying out simple. Was this issue fleshed out in the hearing, Mr. Duncan? I think it was to some extent. But again, that's why you ask the vocational expert questions is to, if you interpret it this way, and that's where the testimony came in about that if he was limited to that, that would preclude competitive employment and would have barred his previous jobs at step four. So. Okay. All right. That's it. Thank you. We'll take the case under advisement. Our thanks to both counsel.